UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY ULUKIVAIOLA,

    Petitioner,

  v.

L.S. McEWEN,

    Respondent.

No. 2:10-cv-1350 WBS AC

FINDINGS AND RECOMMENDATIONS

Petitioner is a California state prisoner proceeding in pro per pursuant to 28 U.S.C. § 2254. The case is proceeding on the basis of the First Amended Petition, ECF No. 24. Respondent has answered, ECF No. 35, and petitioner has filed a traverse, ECF No. 39. The petition presents a single claim of error under Bruton v. United States, 391 U.S. 123 (1968).

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Trial

Petitioner Gary Ulukkivaiola and three other individuals (Langima'a Faulalo, Ben Taholo, and Semisi Fahiua) were charged in a 2004 home invasion robbery and murder in Sacramento. The following facts were established at trial:

Shortly after 4:00 a.m. on March 10, 2004, four armed men broke into the residence of Danny Johnson. Two of the men wore ski masks, and the other two wore either a bandana or a head band obscuring their faces. The intruders yelled that they were police. Johnson, a drug

1   dealer who was the target of the planned robbery, came out of a bedroom.  One intruder shot him
2   in the leg, and another in the chest.  The chest wound proved fatal.  The other occupants of the
3   residence were bound, and the house searched for valuables.  The intruders took several pounds
4   of marijuana, a safe containing thousands of dollars, a gun, jewelry and other items including a
5   TV cable box.
6       On March 19, 2004, Sacramento police searched the home of Ulukkivaiola and Faulalo.
7   They found a pound of marijuana, tape like that used to bind the victims, guns, ski masks and
8   gloves, a TV cable box registered to the home where the home invasion occurred, and other items
9   related to the robbery.  Ulukkivaiola and Faulalo were arrested.
10      Fahiua fled to Oregon following the arrests of Ulukkivaiola and Faulalo.  He eventually
11  contacted the police through counsel and made arrangements to turn himself in.  He testified
12  against Ulukkivaiola, Faulalo, and Taholo under a grant of use immunity.  Fahiua told the jury
13  that he overheard the other three men planning the robbery, and was recruited by Ulukkivaiola to
14  be the driver.  The four men donned masks and gloves, armed themselves, and drove to Johnson's
15  home to steal money and drugs.  Ulukkivaiola gave instructions to the others.  All four men
16  entered the house according to plan.  When Johnson came into the hallway and confronted
17  Taholo, Taholo shot him in the leg.  When Johnson then tried to escape the house, Ulukkivaiola
18  shot him in the chest.
19      Taholo's ex-girlfriend, Shirley J., had contacted the police following the robbery.  With
20  her assistance, the police were able to locate Taholo in Utah.  He was arrested there and returned
21  to California.  Shirley testified that she visited Taholo's house in March 2004 and saw a large
22  stack of money on his bed.  A few days later he admitted to her that he had gotten the money
23  from a robbery.  He described "going over the fence" and acting like a police officer, and
24  admitted shooting "Danny" in the knee because he was not cooperating.  Taholo reported that
25  Danny's girlfriend was screaming and crying and had to be tied up.  He said that he got money,
26  marijuana and jewelry from the house.  Shirley saw a bag of marijuana that Taholo said he got
27  from Danny.  She also saw a ski mask and gun similar to those used in the robbery.
28      When Shirley testified, the jury was instructed that her testimony regarding Taholo's

statements could be considered only against Taholo.[1]  Pursuant to the court's ruling on defendants' pretrial motions, Shirley did not testify to any statements that Taholo made regarding the other robbers or their actions.[2]  Shirley's testimony about Taholo's admissions did not mention the second shot fired at Johnson, but was limited to what Taholo told her about what he had done.

Later in the proceedings, Taholo's attorney became too ill to continue and a mistrial was declared as to Taholo.  Ulukkivaiola and Faulalo moved to strike all of Shirley's testimony.  The prosecutor moved to allow consideration of the testimony against the remaining defendants.  The court admitted the testimony for the limited purpose of corroborating the accomplice testimony of Fahiua.  When instructing the jury prior to deliberations, the judge withdrew his previous admonition and stated that "Ms. [J.]'s testimony regarding statements made to her by Ben Taholo relating to the robbery and murder of Danny Johnson may be considered by you only as evidence of corroboration of Semisi Fahiua."

II.     Post-Conviction Proceedings

Petitioner appealed his conviction, and the California Court of Appeal affirmed in an unpublished opinion dated November 17, 2008.  The California Supreme Court denied review on February 11, 2009.

On May 24, 2010, petitioner filed a petition for writ of habeas corpus in this court.  ECF No. 1.  Respondent moved to dismiss, arguing that petitioner's single claim of Bruton error contained two subclaims that had not been presented to the California Supreme Court and were therefore unexhausted.  In Findings and Recommendations subsequently adopted by the district judge, the magistrate judge previously assigned to this case found that one aspect of petitioner's

---

[1] "Jurors, I want to admonish you that the testimony of this witness, all of the testimony is only relevant as to Mr. Taholo, and you are not to consider it for any purpose as to the other two defendants.  It is only evidence as to Mr. Taholo's case, and it is not evidence and not to be considered as to the other two defendants.  Does everybody understand?  Okay.  Thank you." RT 772.

[2] The trial court denied defendants' motion to exclude Shirley's testimony or, in the alternative, to sever Taholo for trial.  RT 66-73.

claim constituted a discrete and unexhausted claim for relief.[3]  Petitioner was granted leave to file an amended petition containing only exhausted claims.  ECF No. 21 (Findings and Recommendations), ECF No. 23 (Order Adopting Findings and Recommendations).

The First Amended Petition was filed on November 14, 2011.  ECF No. 24.  Respondent's answer was filed on May 4, 2012.  The traverse was filed on July 17, 2012.

## STANDARDS GOVERNING FEDERAL HABEAS REVIEW

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law.  Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

A state court decision is "contrary to" clearly established federal law if the decision

---

[3] The court found that petitioner had exhausted his Bruton challenge to the co-defendant's out-of-court statements regarding robbery, but had not exhausted a Bruton challenge to the co-defendant's out-of-court statements regarding threats.  ECF No. 21.

4

1  "contradicts the governing law set forth in [the Supreme Court's] cases." Williams, 529 U.S. at
2  405.  A state court decision "unreasonably applies" federal law "if the state court identifies the
3  correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the
4  particular state prisoner's case." Id. at 407-08.  It is not enough that the state court was incorrect
5  in the view of the federal habeas court; the state court decision must be objectively unreasonable.
6  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).  This does not mean, however, that the § (d)(1)
7  exception is limited to applications of federal law that "reasonable jurists would all agree is
8  unreasonable." Williams, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive
9  interpretation of "unreasonable application" clause).  State court decisions can be objectively
10 unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to
11 give appropriate consideration and weight to the full body of available evidence, and when they
12 proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397-98; Wiggins, 539 U.S.
13 at 526-28 & 534; Rompilla v. Beard, 545 U.S. 374, 388-909 (2005); Porter v. McCollum, 130 S.
14 Ct. 447, 454 (2009).

15       To prevail, a habeas petitioner must establish the applicability of one of the § 2254(d)
16 exceptions and also must also affirmatively establish the constitutional invalidity of his custody
17 under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc).  There is
18 no single prescribed order in which these two inquiries must be conducted. Id. at 736-37.  The
19 AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v.
20 Andrade, 538 U.S. 63, 71 (2003).

21                                              DISCUSSION
22   I.       The State Court's Adjudication of the Claim
23       Petitioner's Bruton claim was adjudicated on the merits on direct appeal.  Because the
24 state supreme court denied discretionary review, Lodged Doc. 6, the opinion of the California
25 Court of Appeal is the adjudication that must be reviewed for reasonableness under § 2254(d).
26 See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir.
27 2012).  Because the appellate court adjudicated the claim in a reasoned opinion, Lodged Doc. 4,
28 review under § 2254(d) is confined to "the state court's actual reasoning" and "actual analysis."

Frantz, 533 F.3d at 738 (emphasis in original).

II. The Clearly Established Federal Law

In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court held that the Confrontation Clause is violated by the admission in a joint trial of the codefendant's out-of-court statement naming the defendant as a participant in the crime. Where such a statement is redacted to "eliminate not only the defendant's name, but any reference to his or her existence," and where a limiting instruction is provided, there is no deprivation of constitutional rights. Richardson v. Marsh, 481 U.S. 200, 211 (1987). Redactions that leave visible deletions, and therefore obviously implicate unnamed other(s), function as accusatory evidence and fail to satisfy Richardson. Gray v. Maryland, 523 U.S. 185, 194 (1998).

III. Analysis

The state appellate court considered and rejected petitioner's contention that the elimination of his name from Taholo's statements, as recounted by Shirley J., was insufficient redaction and that Bruton error required a new trial. The court reasoned as follows:

> Defendants read much more into Taholo's statements than is actually there. First, unlike Gray, the court did not simply remove defendants' names from Taholo's statements. From what we can tell on this record, Taholo never mentioned defendants to Shirley J. Taholo merely described his participation in the robbery. He said he drove to the robbery scene in a truck, he went there to steal money and marijuana, he "went over a fence to the back," he had a gun, he wore a ski mask, he "was acting like FBI or police officer," he fired the gun at Danny and hit him in the knee "because Danny was not cooperating or charging at him," Danny's girlfriend was with Danny and was "screaming and crying," the girlfriend was tied up, and he got approximately $4,000, marijuana and jewelry from the robbery.
>
> Conspicuously absent from the foregoing is any reference to other participants. Taholo even said he drove to the scene, although Fahiua testified he had been the driver. Although Taholo said he shot the victim in the knee, there was no mention of any other shots fired. And, while Taholo said the victim's girlfriend was tied up, he did not say whether he or anyone else did so. Of course, by the time Shirley J. testified, Fahiua had already testified that there were four participants in the robbery, that Taholo and Ulukivaiola had both shot the victim, and that he (Fahiua) had tied up the victim's girlfriend. . . .
>
> The present matter is governed by Richardson rather than Bruton and Gray. There is nothing in Taholo's statements alone that refer

6

> directly to other participants or to defendants in particular. Only when Taholo's statements are viewed in the light of the other evidence presented at trial is the jury able to infer defendants' participation. Such inferential incrimination does not violate <u>Bruton</u>.

Lodged Doc. 4 at 15-16, 17.

This analysis does not constitute an unreasonable application of the governing federal law. The undersigned has confirmed the accuracy of the state court's characterization of the trial record. Because the evidence of Taholo's statements did not include any explicit or implied reference to the existence of other robbers, there can be no <u>Bruton</u> error. <u>See</u> <u>United States v. Angwin</u>, 271 F.3d 786, 796 (9th Cir. 2001) (for a statement to violate a defendant's <u>Bruton</u> rights, it must "facially, expressly, clearly, or powerfully implicate[] the defendant.").

The Ninth Circuit has held, in accordance with <u>Richardson</u>, 481 U.S. 200, 211, that "a codefendant's statement that does not incriminate the defendant unless linked with other evidence introduced at trial does not violate the defendant's Sixth Amendment rights." <u>United States v. Hoac</u>, 990 F.2d 1099, 1105 (9th Cir. 1993) (citing <u>United States v. Sherlock</u>, 865 F.2d 1069, 1080 (9th Cir. 1989), <u>amended</u>, 962 F.2d 1349 (9th Cir.), <u>cert. denied</u>, 113 S.Ct. 419 (1992)). In this case, Taholo's hearsay statements did not incriminate petitioner even when linked to other evidence. Petitioner was directly identified as the ringleader and shooter by Fahiua. The substance of Fahiua's testimony was entirely independent of Shirley's testimony about Taholo's statements, and the latter added nothing to it regarding petitioner's culpability. The jury certainly understood from Fahiua's testimony that Taholo had not acted alone, but knowing this would not have permitted jurors to draw any factual inferences about petitioner from Taholo's statements to Shirley. Neither in state court nor in this court has petitioner identified any specific portion of Taholo' statement that, when linked to other evidence, supports an incriminating inference regarding petitioner.

The Taholo hearsay did generally corroborate Fahiua's testimony,[4] and following the mistrial as to Taholo the jury was instructed that it could consider the evidence for that purpose as

---

[4] Tafolo's statement corroborated Fahiua's testimony as to matters other than petitioner's specific actions, and thus enhanced his credibility overall.

1  to petitioner and his remaining codefendant.  Petitioner contends that this use of Taholo's

2  statement also violated his rights.  This theory has previously been held to be encompassed within

3  petitioner's Bruton claim.  ECF No. 21 at 4-5.

4  　　　　The appellate court analyzed this issue under California law governing the admissibility of

5  hearsay, and concluded that the Taholo statements qualified as statements against penal interest.

6  Lodged Doc. 4 at 17-20.  This court may not review alleged errors in a state court's application of

7  state law, which do not support federal habeas relief.  Pulley v. Harris, 465 U.S. 37, 41 (1984);

8  Estelle v. McGuire, 502 U.S. 62, 68 (1991).[5]

9  　　　　The state court summarily rejected petitioner's corollary argument that the admission of

10  Taholo's hearsay statements for corroboration violated the Confrontation Clause and/or due

11  process.  Lodged Doc. 4 at 20.  Petitioner argues that this conclusion was objectively

12  unreasonable in light of Crawford v. Washington, 541 U.S. 36 (2004).  In that case, the Supreme

13  Court held that the Confrontation Clause prohibits the admission of testimonial out-of-court

14  statements by non-testifying individuals.  The defendant in Crawford was charged with attempted

15  murder, and claimed self-defense.  His wife, who had witnessed the incident and gave a statement

16  to police, asserted the marital privilege and refused to testify against him.  Her statement to the

17  police, which contradicted the claim of self-defense, was admitted at trial pursuant to a finding

18  that the statement bore sufficient indicia of reliability.  See Ohio v. Roberts, 448 U.S. 56, (1980)

19  (admission of an unavailable witness's statement constitutionally permissible if the evidence falls

20  within a firmly-rooted hearsay exception or bears particularized guarantees of trustworthiness).

21  The Crawford Court overruled Roberts, holding that neither reliability findings nor hearsay

22  exceptions may substitute for cross-examination.

23  　　　　After Crawford, testimonial statements may not be admitted unless the declarant is subject

24  to cross-examination, even if a traditional hearsay exception or other rule of evidence would

25  otherwise permit it.  But "not all hearsay implicates the Sixth Amendment's core concerns."

---

[5] For the same reason, petitioner's arguments regarding the propriety of corroboration as an evidentiary matter will be disregarded.  The federal constitutional issues presented by the Taholo statements are those under Bruton, discussed above, and Crawford, to which the court now turns.

1  Crawford, 541 U.S. at 51.  Crawford's bright-line requirement of confrontation and rejection of
2  hearsay exceptions applies only to "testimonial" statements.  These include an accuser's "formal
3  statement to government officers;" "ex-parte in-court testimony or its functional equivalent;" and
4  "[s]tatements taken by police officers in the course of interrogations."  Id. at 51-52.  Although
5  the Crawford Court declined to provide a precise definition of "testimonial statements," it
6  approvingly noted various proposed formulations that focused on the question whether the
7  statement was made in circumstances that would lead a reasonable person to expect the statement
8  would be used at a later trial.  Id.  As the Ninth Circuit has noted, Crawford's examples "all
9  involve live out-of-court statements against a defendant elicited by government officer with a
10 clear eye to prosecution."  United States v. Cervantes-Flores, 421 F.3d 825, 833-34 (9th Cir.
11 2005), cert. denied, 547 U.S. 1114 (2006).

12      Not all statements in response to law enforcement questioning count as "testimonial."  In
13 Davis v. Washington, 547 U.S. 813 (2006), the Court addressed the question whether statements
14 made to law enforcement personnel during a 911 or at a crime scene are "testimonial" for
15 Confrontation Clause purposes.  The Court held as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

21 Id. at 822.  The Court specifically left open the question whether a statement made to someone
22 other than law enforcement personnel can be testimonial.  Id. at 823 n.2.

23      Taholo's admissions to his ex-girlfriend fall far outside the scope of statements recognized
24 as testimonial in Crawford and Davis.  The statements were not made in circumstances indicating
25 an expectation that they would be used in court.[6]  On the contrary, the statements were made in a

---

[6] Petitioner focuses on the accusatory use to which the statements were put at trial, but the question whether the statements are testimonial within the meaning of Crawford turns on the circumstances in which the statements were originally made.

private conversation with an intimate partner.  Statements made to friends, acquaintances and family members have regularly been found nontestimonial.  See, e.g., United States v. Castro-Davis, 612 F.3d 53, 65 (1st Cir. 2010) (statement to close family member nontestimonial), cert. denied, 131 S.Ct. 1056 (2011); United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004) (statements to loved ones and acquaintances nontestimonial); Horton v. Allen, 370 F.3d 75, 84 (1st Cir. 2004) (statements made in private conversation nontestimonial); cert. denied, 543 U.S. 1093 (2005); United States v. Boyd, 640 F.3d 657, 665 (6th Cir.) (statement to companion nontestimonial), cert. denied, 132 S.Ct. 271 (2011); see also Giles v. California, 128 S.Ct. 2678, 2692-93 (2008) (noting in dicta that statements of battered women to friends or neighbors would be nontestimonial).  In light of this body of law applying Crawford, the state court's rejection of petitioner's Confrontation Clause claim cannot be considered objectively unreasonable.  See Delgadillo v. Woodford, 527 F.3d 919, 927 (9th Cir. 2008) (state court not unreasonable within meaning of  2254(d) in rejecting Crawford claim, because declarant's statement to coworkers was not testimonial).  Accordingly, the AEDPA precludes relief.

## CONCLUSION

For all the reasons explained above, the state court's adjudication of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Accordingly, IT IS RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are

////

////

////

////

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 28, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE